Case number 23-5152. Carol A. Lewis and Douglas B. Sargent on behalf of themselves and all others similarly situated at balance versus Xavier Becerra in his capacity as Secretary of the United States Department of Health and Human Services. Mr. Pistorino for the balance. Mr. Koppel for the appellate. Good morning, may it please the court. There are at least two just basic fundamental errors in the district court's decision in this case. First, the district court actually decided the merits of the case as a condition of class certification, when at the same time, the Supreme Court has said at least twice, you don't do that. So just from the get go, you don't decide the merits. Second, and again, Amgen, the Supreme Court says an evaluation of the probable outcome on the merits is not properly part of the class certification decision. And there the Supreme Court's just citing the comments to Rule 23. Second, continuing on that, say, you know, Judge Wall, the district court and the Secretary's approach of deciding whether claims are viable, just whether they're viable, is barred by at least Eisen, Amgen, this court's decisions in Veneman, and also we would contend Mollick, and the rule itself. Moreover, again, it would- I don't want to get too deeply into the merits. Can I ask you about standing? Yes. Your clients won summary judgment, and you're appealing. That's an odd procedural posture. I might characterize a little bit differently. I'd say our clients lost summary judgment. The Secretary moved for summary judgment. The clients got relief on the merits. So the only question is, why can you appeal from an order that gives your clients all the relief on the merits you want? The most likely explanation is Roper says, well, if you win, if you appeal the denial of class certification and you win, then maybe there will be some mechanism for spreading costs, getting costs from absent class members, right? I think both Roper's and U.S. Parole Commission both say that there's an independent interest in the- in being a representative of a class action, and for example- Are you relying on that theory? Suppose I disagree with you about that. Suppose I think your clients need a particularized interest as individuals. I think, at least as I understand, both Roper's and U.S. Parole Commission, I think that would be contrary to both of those, right? And again, if you- again, both, I think, Roper and U.S. Parole Commission indicate that the- that one reason that we have Rule 23-F for discretionary interlocutory appeal, right, is because the right to appeal- the right to appeal is part of the premise of the whole thing, right? So again, your Honor's question about aren't we in the same position? You know, we've got everything we want. If I may, I'd just say I think that was exactly the situation of the plaintiffs in Roper, right? In Roper- In Roper, the court said they had a traditional individualized interest because if they reversed the denial of class certification, they might recover costs from absent class members that they would otherwise have to bear. That was the theory of Roper. If I understood it correctly, actually, I think in Roper, the defendant tendered to the plaintiffs everything they asked for. The plaintiffs refused and the court imposed it, just like here, just like here. The court imposed it. And what the Supreme Court, I think, said is, you can't do that. You can't impose exactly what they want on them as part of that and sent it back. So again, if you're going to have- Is there any mechanism under which your clients in this case, individually, will be better off if you win the appeal on the class certification denial? I mean, I can think of two possibilities. One is you get costs from absent class members, which I think was the rationale of Roper. The other, which you haven't really articulated, but it's lurking in the record, is that you might get a higher EJA award of fees. So again, I think, and actually, I think this might be in the U.S. Parole Commission, right? Again, what the Supreme Court came back to is the issue of why would we let people appeal the denial of class certification, even if judgment is entered in their favor? I think they went to exactly the issue you're raising. And they said, yes, we will, because one, they have the separate interest in representing the class members, right? And as part of that, they identified, again, one idea of the Rule 23, the whole Rule 23 process is spreading the cost, spreading the cost of getting attorneys, spreading the cost of getting attorneys. So again, to come back to, they would have an interest, again, in vindicating their interest, as identified by the Supreme Court, in being class representatives, and also an interest, again, in even being able to start the case. Mr. Pistarino, though, have you argued that there's a cost-spreading rationale for maintaining this appeal? Well, in our briefs... Is that just something we should assume after Roper, that that's always a reason for maintaining standing in the class action context? My short answer would be yes. I think after Roper, and actually, I think it's the U.S. Parole Commission, right? The short answer to Judge Rao's first question, no. Was this in your brief? So no, I actually think our brief did cite to these... Where in the brief? I'll get you the... On reply, I'll get you the particular page notes, but I know, for example, I did cite this exact thing about... I think it's from the U.S. Parole Commission, talking about... About spreading litigation costs. Yes, yes. And again, if you just think about it practically, if you were wanting to start a class action, and you told the potential attorneys, again, the idea is to get potential attorneys, you said, well, you know, if my individual guy wins, right? If the class representatives win, the plaintiff's able to, you know, quote, unquote, buy them off, the case will be completely over. You wouldn't be able to if you're contending that the simply enter of judgment over their objection in favor of the name representatives deprives them of standing. Again, it would just be inconsistent with Roper and deposit guarantee, and no attorney would take that case, right? Oh, I'm going to get whatever you could get for an individual person versus a class action overall. So you're relying on the Roper rationale, not on the Garrity rationale, or the U.S. Parole Commission rationale? At least I understand that. I think they're both, because I recall... Your broader rationale is none of this matters, because the putative class rep has this private attorney general interest in representing the class, which is distinct from the merits, right? Correct. That's a broad reading of Roper. It might be supported by Garrity. We will deal with that as a legal argument, right? Suppose I disagree with that reading the cases and think narrower reading of Roper, which is you need to show that the individual putative class reps, the named plaintiffs have to show an individualized concrete injury. Do you have an argument on that point? I guess maybe my short answer would be no. So if the cases from the Supreme Court, if Roper and U.S. Parole Commission do not stand for the proposition, right? That even if a judgment is entered in favor of the named plaintiffs, they lose the right to appeal because they don't have standing, right? Judgment entered in their favor. They lose the right to appeal because they no longer have standing. That would be a completely different rule. That's not what the Supreme Court said in those cases. Okay. Individualized interest, the whole idea of let's get all the cases together. Let's have the prospect of having a class council, right? By litigating cases together when the individual litigation of each case individually would be uneconomic as it would be here. Again, the average claim here we say is about $4,000. No one's going to litigate the case at this point for five and a half years, right? No attorney's going to litigate a case for five and a half years through appeal for $4,000. The only way you get a part of being able to start that whole process, you've got to be able to appeal denials of class certification or the Rule 23F discretionary appeals as we say in our papers, right? It would transform that into a case dispositive motion, right? Wouldn't be discretionary. We consider it's disfavored approach. We only consider in special circumstances, right? If you were to lose the class certification at that stage, when you know your underlying case has merit, then the case will be over. You'd have to appeal to win it. And again, just contrary to Roper, contrary to U.S. Parole Commission, contrary to discretionary nature of Rule 23. And when you talk about interest, interest, interest, do you mean the attorney's interests or the plaintiff's interest? The plaintiff's interest in being a class representative. Again, the Supreme Court identified that as a separate interest distinct from their interest in winning on the underlying merits. And again, as part of their interest in being a class representative and be able to bring the case, again, what the Supreme Court said is actually the attorney's fees is a significant component of that. How could Ms. Lewis, one of many representatives, how could she get an attorney to take her case on, prepared to litigate it again for five and a half years when the underlying claim, I think in Ms. Lewis's case is like, what, $1,500, something like that? She couldn't afford to fund the litigation. No attorney would take it if the potential award at the end of the day is $1,500 from Ms. Lewis. So again, I think it would just be totally contrary to, again, what the Supreme Court has said in these cases. They want to transform Rule 23-F to having a circuit court accept the discretionary, disfavored Rule 23-F motion into a dispositive motion on the case. Again, every case that would be denied, again, you'd have to be a completely different world. And what the Supreme Court said in those cases is, because of the ability to appeal a class certification decision after judgment in favor of the named representatives, that's why they said, well, we're going to be happy to have Rule 23-F be discretionary. In a case like this, it's an APA-like action. It's not an award of money damages. It's setting aside agency action. How does counsel get funded? I assume it's through some sort of contingency fee, and you hope you get an EJO award at the end of the case, right? So in terms of the actual component here- I'm not asking you about your in a damages class. I get this. Roper says what Roper says, and it's easy to understand. It's easy to imagine a mechanism in which, if the class gets certified, there's some mechanism for adjusting the damages awards to the absent class member to fund the thing, and that makes the individual named plaintiffs better off. I'm just not sure that can work in an APA-like case, which is why I'm pressing you on what's the individualized interest at this point. Sure. So just coming back more generally, I think you're right in some sense, the way you're phrasing it, is that the ultimate award, again, you might be able to tell from the papers, we've litigated this issue three times already in the prior cases where attorney's fees were awarded, right? So the judgment that comes out is not you win $4,000. What you win is an order to the secretary to rescind the denial and provide coverage. So one way that you can get attorney's fees, again, as we've won in three other cases now, well actually four other cases, is you could get it under EJA, but I don't know that that's the only way that you could get it. I think you could actually get it under just traditional straight contingency agreement, right? Contingency agreement when the class members, right, when the denial is reversed, the class members would get the money. They were denied as for the coverage. I think you could get a component of that pursuant to contingency agreement. So it could actually be both, in both instances. Mr. Strano, I had a question. If we do get to the merits, and say, assume we disagree with you that the district court could properly exclude untimely un-exhausted claims. Do you dispute that if those claims are excluded, then there are only 17 viable claims? Yeah, yes. Do you dispute that number? Yes. Okay. Yes. So again, where do you dispute that in your briefing? Yeah, I think it's actually, I want to say it's page 10 of the reply brief in particular, but in general, that number is disputed. As we've said, and I think actually we say, you don't get to the merits, but at a minimum, assuming they were pled and assuming you could in that hypothetical world, what you know is that the claims that would still be live, no matter what else happened, were all the claims that were live on the day the case was filed because of American Pipe. So we cited it below. I know we cited it in our papers. Because of American Pipe, every case, every claim, by every person that was live on the day the complaint was filed in December of 2018 is in the case because American Pipe stops all that. So again, I know in our papers, for example, we cite, if you look at, hold on, let's get to the JA site real quick here. If you look at JA 357 through 358, I actually provide a number sort of a couple different ways, but taking the secretary's position that it should be claims that 60 days before the complaint was filed, at that time it would be 117,000 claims filed by 34,000 people. So it's not 17. And as we say, it's premised on simply just ignoring American Pipe. So again, you got American Pipe. The case could never be smaller than 34,000 people. I know the secretary cites to a case called Medellin from the Eighth Circuit, where it's the exact same thing. They sort of, again, actually quite instructive. They broke the potential class members out into four groups, right? And then this group three was all the claims that were live when the and group four was the claims that came after. Claims that came after the complaint was filed. And again, I know what we say here is, if you look at the, again, the last bit of discovery we have, again, I want to make this point, with regard to Part B claims, original Medicare claims, right? The last bit of discovery we have is from July, 2019. And at that point, we calculate the secretary was denying about 13,000 claims per month. And what we know from all this activity, go back into it. Basically, the secretary stopped applying that policy, they say, in May 2022. They got about another two and a half, three years in there when claims are increasing at 13,000 a month. So you never get to 17. The 17 comes from assuming you ignore American Pipe. How many people went all the way through these five levels of process and got to the point where they could file a suit in district court? Again, just disregarding the whole idea of a class action, you shouldn't have to do all that. That's where the 17 comes from. We found 17 people that weren't misled by all this stuff, went through the five levels and got to the point where they could have filed suit in district court. But again, American Pipe says you don't do that. You don't do that. I'm sorry, do you want to have a question? So just coming back again, I know, so again, this first thing, this is just the poster child for a class action, right? You've got more than 375,000 claims through July 2019, filed by 90,000 people. On average, again, as we calculated from the limited discovery we have from the secretary, that claims for about $4,000. It would be uneconomic to litigate each one. Every single one of the 90,000 people, they have the exact same theory of liability. That's true, but you do have the individualized defenses. Which defenses are you referring to, your honor? Exhaustion, statute of limitations, amounting controversy. So I don't understand the amount of controversy to have been an individualized defense here. I'm not aware of that. Likewise, with regard to exhaustion and statute of limitations. Again, as we say in our papers, problem one seems like it wasn't ever pled. Never pled. So that seems a problem under Rule 8, right? Must affirmatively plead, never happens. Even assuming it had happened from a class certification perspective, as we say, you know, under 23A, it's not even relevant to 23A. Doesn't even come close to 23A. It's not a factor to be considered for under 23B3. I'm sorry, I'm sorry, 23B2. And with regard to 23B3, as we say, it wouldn't be individualized. Like, for example, one thing would be is for claims filed after January 2017, appeal of them would be futile. The secretary, again, from Genesis litigation in large In 2017, the secretary, without complying with notice in common, issued a decision. Again, if you want to see it, I think we got to at JA 688 through 703, where the secretary got a doctor, Mr. McConway, to say that the life-saving CGM doesn't serve a medical purpose. Not primarily and customarily used to serve a medical purpose. And based on legal issuance of that, again, adjudicated bad-faith position. Based on that adjudicated bad-faith position, again, the secretary's regulations say that everybody within Medicare, all the way through from the initial consideration to redetermination, through reconsideration, through the ALJ, through the MAC, were required to deny CGM claims. So we want to talk about they've got a mandatory policy saying that they could never come to an opposite conclusion. So is that particularized? Doesn't sound like it to me. And that's just picking one. Again, because my base position, we should never look at the merits at this stage. And as we read all the case, every case, including Veneman from this court, saying you can't do that, right? Inappropriately mixed the merits with class consideration. You couldn't do it. But sort of five basic bases in our reply brief. These would be just straight-up common issues. How about the issue about what did the initial denial say? Did they have the explanations complying with the statute? I haven't seen one that said that. And I've only seen the ones, again, I think an important point, I've only seen the ones for the Part B cases, right? We know in 90,000 of them, we contend, they just flat-out lied to them that there's some statute that precludes it and there's no such statute. Nevertheless, it doesn't comply the statute itself that the denial has to be calculated in a manner to be understood by the beneficiary, a regular person. So they don't, of the ones we've been able to see, flash, they lied to them, told them the wrong purpose. And again, I think an important point that really comes back to some of the other issues here is there are about 25,000 Part C people, Medicare Advantage people that would be in the class through this date. There's never been a shred of discovery with regard to those people. What were they told? Were they told anything? We don't know. And again, a big problem here, again, coming back to the issue about trying to decide the merits as part of class certification, where does that come from? Judge Walton found that those people failed to exhaust, or I'm sorry, that exhaustion should not be weighed for those people. On what evidence? Since nobody knows what they've been told because the denial of the discovery of it is out there. Again, it's just, I don't know, I guess they lose when nobody knows who they are. There's no evidence about it. Why don't you wrap up? Thank you. So just wrap up very quickly and I'll sit down. If I may, again, as we say in our briefs, we also request, hope that the court will order the class certified. We've been here five and a half years. This is not in compliance with Rule 23, right? This is not early practicable date. It's the first thing in a class action case and we're standing here arguing about it. Again, on rationale directly contradicted by the Supreme Court. And as we also request, we request the court reassign the case for the reasons set forth in our brief. Thank you, your We have to deal with it. Does the government have any thoughts? You've heard the colloquy. Yes. May it please the court, we did not address standing in our brief. We do think this case is pretty close to Roper, although I do agree. Close to Roper in what sense that the mere fact of being a class rep, putative class rep is enough to give standing or that this plaintiff has some concrete pocketbook injury because of the way fees or costs might be shifted. In the first sense, in the sense that being a well, well, not necessarily. So this is what I was going to get you. I do think that there is a lot of truth and you are correct in what you, I think we're saying that, especially in a case against the government where the fees are going to be paid most likely from under EJA, there is no interest in spreading litigation costs among the class. The Roper rationale of shifting from absent class members to the named plaintiff doesn't seem to work. That's right. EJA rationale might work, which is if they win, if they win on the issue that they want to put before us, maybe the EJA award to the named plaintiff is higher. Well, there's no EJA award. Well, the plaintiff's attorney certainly has an interest here. The EJA award to the plaintiff's attorney is going to be higher. Payable to the prevailing party. Nonetheless, I think that is really the attorney's interest. I don't think that that is the plaintiff's interest. So I do not necessarily, we haven't taken a position on that. We haven't taken a position on it, although I certainly understand that this case is certainly distinguishable. Okay, I'll let you go on. Thank you. Until today, I think, I did not understand, I don't think plaintiffs at all disputed that of the class they sought to certify, there were only 17 individuals in the same boat as the named plaintiffs with claims that were administratively exhausted and timely under the 60-day statute of limitations. Plaintiffs now say that on page 10 of their reply brief, they made this argument that there are more plaintiffs. There may be an oblique reference there. Even if the reference were clear, you can't preserve an argument in a reply brief. You certainly can't preserve an argument by raising it the first time at oral argument. Any argument that there are more than 17 unnamed plaintiffs with timely and exhausted claims is long forfeited at this point. And even if it weren't forfeited, I'll just note that plaintiffs suggest that the pendency of this class action told the statute of limitations for putative class members. That much is true, but it did not relieve any putative class members of any burden to exhaust administrative remedies. So any claims that were still working their way through the administrative process, those putative class members had to continue that administrative process. American Pipe deals with tolling of the statute of limitations. It does not deal with, it does not say that the pendency of the class action waives the requirement to exhaust administrative remedies. Can I just ask you a factual question? I'm wondering with the change in policy at HHS, whether the agency is now just as a routine matter, paying these claims for continuous glucose monitors. The agency is paying claims as they come up now, certainly in addition to under the policy past claims that are still working their way through the administrative process or where there is still the claimant is still within the window for an appeal, whether administrative appeal or to seek judicial review, the agency is paying those claims. So the other 99.98% of putative class members here couldn't meet the basic threshold requirements to state a claim under the Medicare Act because their claims were not administratively exhausted and not timely. And plaintiffs told the district court that they would explain at some later point why all those other putative class members could bring their claims nonetheless. But they steadfastly refused to make that argument at the class certification stage. Instead, plaintiffs asked the district court to certify a class now and figure out the proper number of claimants later. And that position would relieve plaintiffs of their burden to establish each of the requirements under Rule 23a, including numerosity, specifically circumvent that numerosity requirement. For class certification purposes, question is not whether that exhaustion, whether your exhaustion defense has merit, right? It's whether you have to adjudicate it on an individualized basis, right? Uh, no, I think so. If you were looking at this under the Rule 23b3 predominance prong, I think that you would be looking at whether you need whether that exhaustion defense can be individualized or not. If it's a global defense, then his eyes and point is right. You don't decide the merits only with regard to predominance. You still need to establish numerosity. You also need to establish typicality, the end, uh, the exhaustion defense, which the name plaintiffs here had exhausted their claims. They had timely claims. So this issue also goes to typicality. The district court here only had to reach numerosity under Bowen. Uh, it it's the district court was correct to determine at the outset whether the putative class members had exhausted and timely claims or whether they could waive the exhaustion requirement and told the statute of limitations. And because they could not, they were not proper members of that class. This court said in Zang versus USCIS that a class certification order can't revive untimely claims, nor can time barred claimants be included in a class action. And that's exactly the case here. The district court applied that rule, applied Bowen and applied the numerous cases from out of circuit to first determine whether the putative class members had viable claims, whether they could meet these threshold requirements of timeliness and exhaustion because they couldn't. The district court excluded those individuals, was left with a class of 17 unnamed plaintiffs and said there's that that doesn't meet the numerosity requirement of rule 23a. Uh, and in addition to Bowen and, uh, and Zang, this case that I think is, is nearly identical presents very similar facts to national association of government employees from the fifth circuit, Gil Christie Bulger, which we cite in our brief from the 11th circuit. In both of those cases, the district court denied an order, denied class certification, finding that most of the putative class members had untimely claims. And the number of class members with timely claims were in one case was 11. And in another case, the court couldn't figure out exactly how many individuals had timely claims. And so the court said that the plaintiffs in those cases couldn't establish the numerosity requirement of rule 23. Do you think that the, do you think that the district judge in this case has, um, proceeded more slowly than is appropriate? I don't know that, that the district, whether the district court has proceeded more slowly than is appropriate. I want to pine on that. I would certainly say that reassignment in this case is unwarranted. In four and a half years, the district court decided a motion to dismiss a motion for preliminary injunction, a motion for class certification, numerous discovery motions, and then entered final judgment. Plaintiffs don't like the way that the case turned out. They disagree with how the court decided many of those motions, but that doesn't mean that the dis that this case is, as they say, has languished on the docket. It certainly has not. And, and in any event, uh, you know what, I, I'm not sure I see that the gap between it has not languished on the docket, but you're unwilling to say whether the district court has proceeded with a slowness that is inappropriate. Uh, I, I don't, their, their claim on appeal, their argument on appeals that the case should be reassigned. We certainly don't think that there are any, uh, any facts here warranting reassignment. And part of why they say it should be reassigned as they say it languished on the docket. But if that's true, then it seems like you would be quick to say the district court proceeded with a speed that was appropriate. I'm not, you know, I, I did not litigate this in the district court. I can't speak to what is appropriate. I think, I don't know, um, appropriate within the realm of, you know, certainly not warranting reassignment. Absolutely. Um, you know, yeah, we asked that the court affirmed the decision below. Thank you. Thank you. Thank you very much. Um, give you two minutes. Thank you. Um, judge Walker, I wanted to go to your points where we argue these things in our briefs. I think in our opening brief with regard to rope or an attorney's fees and that kind of thing. I think if you look at page 33 of our briefs, I think if you look at pages 15, 19 and 20 of our reply briefs. So reply brief isn't enough to save you from forfeiture. And I thought you might say page 33 for your opening grief. You do talk for about a paragraph about Roper. You don't ever say you have an interest in, in spreading the litigation costs. Um, and I guess maybe what you'll say is, well, all we had to do was cite Roper for a more general point. And that preserves an argument that you wanted to spread the litigation costs. Is that I think in our, I think I believe if I'm correct, I think in our opening brief, we have a whole section. I think the very first one saying the case has not moved for these same reasons, right? Because you have the ability, they have the independent interest. Where do you argue that you have an interest in spreading the litigation costs? I don't believe we argued that you have an interest in spreading the litigation costs in the opening brief because they raised that in their opposition brief, uh, contending, I think, for example, that the plaintiffs are no longer typical. So as a response to that, we're relying again on Roper. And then on the issue of spreading litigation costs versus just increasing litigation costs. So I get that, you know, if, if you could prolong the case, you would increase the litigation costs and then get more from, from EJA. But I'm not sure how you will be spreading the litigation costs that have already accumulated. I'm struggling with your question to say that in the first sense, of course, our goal has never been to prolong the litigation. Our goal since the beginning, I think actually since some of the first hearing before the district court has said, I'm ready to move for summary judgment. Maybe, let me maybe ask, I didn't ask the question very well. Uh, but under as of right now, can you get your, the hours that you've worked on this case? Can you get paid for that? I would say we don't know, right? We don't know because again, the absent class certification, if the court assessed it the way you want the court to assess it, you could get paid for the hours you've worked. I think again, when you say the court would assess it, if you, if under EJA, under EJA, again, there's a prong, I think it's paragraph B and paragraph D, a court would first have to decide that the government's position lasts substantial verification. Or I think it's under D that the government's position again, was in bad faith. So if the court were to make those determinations under either of those two things, then yes, you could get, um, you know, different rates depending upon which one you could get paid on. You need to do that even if you got class certification, right? Well, again, if you're ultimately will be faced with that, that choice of doing that. That's correct. I'm just not seeing how class certification helps you get compensated more for the work that you've already done. So again, as I, as I said before, I think there's two, there could be two components of attorney fee compensation. Again, as the Supreme Court says, contingency fees play a significant role in the class action context. So as I said before, I think you could get attorney's fees under EJA and under a contingency fee agreement. So again, your starting point is the broader, the broader the class and the more potential awards attorneys fees could be. If I can, I just wanted to come back to a couple of points. I heard Bowen again, I keep on hearing that. And I know we've submitted a motion for I provided the court with an actual copy of judge Weinstein's order certifying the class within three months of the Bowen case being being filed. As I said all along, all the cases that I hear from the secretary, all the cases that are ever cited fall into two camps, right? One where the defendant files a motion aimed at the name plaintiffs, name plaintiffs and the name plaintiffs who have attorneys and know of the case oppose that and something happens in some way result. I think that might be the Naga case. Many cases fall in that category. You move against the name plaintiffs, you fail to exhaust, for example, and the result on that determination, right, could control the class certification. That's one of the big groups. Every other case that I've ever heard them cite, it's after a class is certified and after the class members have notice and counsel to champion their interests that the court looks at the merits and then makes a determination and then may modify, may modify the class or not. In Bowen, class wasn't modified later, but there was never. I mean, there is no case where a court first out of the gate decides the merits with regard to the absent class members. Geez, you think it'll be a good idea. Maybe they should know of the case. Maybe they should have attorneys to represent them. That would seem like a good thing. Thank you very much. Thank you, Your Honor.
judges: Katsas, Rao, Walker